The next case for argument is United States v. Bowen. Good morning, Your Honor. May it please the Court, Michael Kennedy on behalf of Jeffrey Bowen. The relief that we seek is the following. First, that you vacate the restitution order, remand to the district court to impose restitution not greater than $172,000. Second, that you reverse the conviction and remand for a new trial on two errors. First, the exclusion of the testimony of the former counsel, Richard Melezo, to Jackie Hayes. And second, the exclusion of Jeffrey Smith's entire expert testimony since he was not given the ability to give his opinion and then bases and reasons for the opinion because the court limited him to questions which would say, if the jury concludes when the whole purpose of presenting testimony is to give an opinion and bases of reasons for the jury to reach a conclusion. That is the three errors that we're speaking to. Now, with respect to the restitution, I'll get to it quickly. First, the court knows that restitution is based on actual loss. Second, the court imposed restitution on intended loss, inflating that. The reason the $172,000 is the mark is that the conspiracy, which was found, was from 2010 to 2014, paying Ms. Hayes instead of Mr. Alesso because Ms. Hayes was an independent contractor and that was the allegation under 18 U.S.C. 371 that would impair, impede, obstruct, or defeat the IRS from garnishing monies from Mr. Alesso for Mr. Alesso's tax debt, as Mr. Bowen had no tax debt, had paid $900,000 in taxes during that time and was paying the person they had the contract on. That was the error and what we have is an abundance of factual information to say that the total amounts paid during that time period was $172,000. So the court's order that restitution should be $502,000 and some change based on Mr. Alesso's $206,000 of tax debt between 1998 and 2006 for which Mr. Bowen employed him as an independent contractor and paid every dime plus the interest and penalties. So is the binary between $175,000 and $500,000, those are the two choices of restitution? Well, no. The top floor would be $172,000 because that would be the total amounts of money paid because we went with – Well, isn't it the standard is what would have actually happened if the defendants acted lawfully? Correct. So if the defendants acted lawfully, wouldn't Alesso have paid the $500,000? No, because the $500,000 had been from 1998 to 2006. And so we're talking about then many years later in 2010 paying Hayes instead of Alesso. The total amounts of money that was paid by Mr. Bowen to Hayes was $172,000 for the team leader function. Ms. Hayes testified that she had Mr. Alesso do it because she was an independent contractor and that it was her ability to decide that. The charge was a conspiracy charge between all three of them, correct? Correct, but there was no – If the object of the conspiracy is to defraud the tax, the amount of the tax is $500,000. And frankly, my question is was there evidence that Alesso could have paid the full $500,000? Absolutely not, because the monies that were paid to Ms. Hayes that on the jury verdict alone would have gone to Mr. Alesso directly was $172,000. So that would be the amount. Well, is there any other evidence that he has other income? No, and also there's evidence that during the conspiracy period Mr. Alesso became a W-2 employee in 2013 and Mr. Bowen paid his taxes that year by withholdings. So it wouldn't be that he was to defeat the entire amount because Mr. Bowen was relying upon the independent contractor's staff. $172,000 was the amount of income that Alesso concealed during the conspiracy period, correct? That would be the amount on the jury verdict. And what is the conspiracy period again? Bowen was convicted of conspiracy. What was the conspiracy period? Beginning in 2010 and ending in 2014, yes. All right. So your point is that the overall, apart from it being a conspiracy conviction, clearly conspirators are liable for all the conduct and furtherance of the conspiracy, correct? It does. So your argument basically is that in furtherance of the conspiracy, as defined in the indictment, the conspiracy was for a particular time period, and your argument is that the $502,398 was for a time period greater than the conspiracy. It was, and it was outside of it in terms of the debt, and had they, under the Ninth Circuit standard, had they done what would have been legal in terms of the jury verdict. During the 2010 to 2014 time period. $172,000 would have been paid to Mr. Alesso, yes. And that is the essence of what we're inflating the intended loss versus actual loss. So in follow-up to Judge Bumate's question, the answer is that there are two figures very well defined here. There is a total $502,398 figure of tax, essentially the amount of the tax debt. Yes. And as opposed to the very, no dispute what the figures were, that was concealed during the particular years as charged in the conspiracy. Yes, and there's count two against Mr. Alesso, which he could be held liable. I understand. Under count two, but the count one, the conspiracy was different. Bowen was just convicted on count one. That's the only count, yes. I understand. He had no other. What years were count two? Count two is for Mr. Alesso's substantive actions during that time. So it goes all the way to his earlier tax debt. So there could be under restitution all the way back to his failure to pay taxes and the time period. Yes. So then it's his actions during that time. So it deals with his tax debt, and Mr. Bowen did not have any. But when did Alesso's tax debt become, was he notified about his tax debt? I thought it was in 2010. I think he was notified as early as 2006 because Mr. Bowen had a conversation with him which was repeated that you go get professional help, you do this, you deal with it. And Mr. Bowen, as we move to the new trial issue, was operating under the fact that Ms. Hayes was an independent contractor, you pay the contract. And if she decided to have Mr. Alesso work for her, that was her business and her business alone. Moving on to the new trial request. First, on the teardown case, Jackie Hayes committed perjury, and Mr. Bowen was precluded from having the jury know that because her former counsel testified in a proceeding at the change of plea that he had presented the offer to her, and she said no. Then we alerted the court to that prior to her change of plea on the eve of trial, cross-examined her on it, then the government on redirect brought it out again. And at that point, Mr. Bowen's counsel, myself, asked to be able to call her former counsel because not only did we have his response to the court. How would the former counselor ever be able to testify against his client? Because, one, we have a crime-fraud exception. She committed perjury. That's not a crime-fraud. The advice that he gave her was a communication of a plea agreement. That's not fraud. No. He answered the judge's question. Did you communicate the offer to your client? Yes, I did. I wouldn't be a lawyer. I shouldn't be a lawyer if I did not. But that's attorney-client privilege. No. It was in open court. In open court. Oh. In open court it was. In terms of the Lafler case. Okay, the Lafler case. Yes, and so we have two contradictory things in open court. So the district court made a finding that it doesn't involve attorney-client. We also made the finding that both myself and Mr. Alessa's counsel heard her, on a separate occasion, say that that had been communicated, and we made that as an offer to her. But how does that – the district court, you're correct, didn't rule that there was any attorney-client issue, but the court ruled that it was a collateral matter under 608, that essentially it's a dispute between her and her lawyer with respect to, under the requirements of the Lafler case, and there are two of them. One's Lafler. I forget the name of the other. You have to advise, you know, before a guilty plea, someone's been advised of a plea agreement. And essentially she said, I was never advised of it, and her lawyer in defense said, oh, yes, she was. I advised her of it. But how is that not really collateral? What does that have to do with respect to Hayes, her dispute with her prior lawyer in terms of her testimony, in terms of the nuts and bolts of this conspiracy? Because it was brought out on cross-examination in front of the trial jury. Then the government repeated it on direct examination and to, quote, in the Ninth Circuit cases, Castillo and Judge Bybee's opinion in Kincade, Chauncey says impeachment by contradiction is prevented to prevent witnesses from engaging in perjury and then using the prohibition on collateral fact testimony to conceal the perjury. Rule 608 deals with conduct. Let me follow up, if I can. Counsel, I'm sure you're obviously very experienced. These kinds of issues come up all the time with respect to a person saying, I was not advised of the plea agreement. The lawyer says, yes, I did advise her or him of the plea agreement. And judges have to make decisions all the time of whether a person was or was not involved of a plea agreement or a plea offer, rather. I mean, that is to some substance of your argument that some kind of perjury was proven as to Ms. Hayes in that she insisted that she was not advised of a plea offer and her lawyer defending himself said, yes, she was advised of a plea offer. Isn't that the nut and bolt of it in its entirety? Under oath plus, both myself and Mr. Less's counsel heard her say. I understand. And we made an offer of proof. So when the government went back up on redirect and made it a point to point out that the lawyer was lying and now you have a new lawyer. Wait a minute. Let me walk through this. Let me walk through this. I don't mean to belabor this, but in terms of it not being an attorney-client issue, but walk through this. So you're going to have the judge try to go off and determine a fact about who the judge believes as to whether the lawyer is honest in saying I made the plea offer or her saying, no, I didn't get the plea offer. It really is going far afield in terms of judging credibility of the lawyer versus the client, is it not? With respect, I'm interested in the 12 members who are a jury to get the opportunity to judge that because it was the only direct evidence against Mr. Bowen in a case that he didn't owe taxes. And, yes, she was cross-examined well, but perjury is different. And that's the import of Castillo in Kincaid, Chauncey. And when the government got up on redirect, that is when I said now we should be able to call Mr. Melezo. And as the court knows from the filing, there were very specific four questions that we asked. A juror might decide, okay, I've heard that she's cheating on her taxes, she's doing all this. But perjury, to me, in this courtroom, I'm not going to believe her. And so that goes to the due process and compulsory process right. And in addition, because I see that my time is running low, I'll try to reserve one minute and get to the second part. When you have an expert, Mr. Bowen testified to his subjective belief in the independent contractor status. Jeffrey Smith was not only a special agent, a CPA, he had gone undercover, he had opinions. And those opinions were robbed from the jury's conclusion. Why is that not harmless? It's not harmless because although the standard for willfulness and specific intent to impair, impede, and obstruct and defeat is a specific intent, objective evidence on top of someone's subjective belief is important in these cases. And the jury was robbed from that because if the jury concludes this, there's no reason to even give the testimony. And Morales is the case. There was no problem with ultimate issue here. Mr. Smith could testify, A, I have this opinion. My basis and reasons are these facts. That was excluded from the jury on each count that is laid out in the brief. And I see that I'm running close to my time, so I will reserve it. Thank you so much. Thank you, Counsel. Good morning, Your Honors. May it please the Court. Mark Detterman for the United States. I'd like to start on the restitution issue. First, the $502,000 was the actual tax loss to the government. It is an actual loss. The government is owed that amount. The district court during the sentencing found that the, specifically found that the object of the defense was to prevent the government from collecting any of that $500,000. So I believe that the $500,000 is the correct amount owed here in restitution. But the problem with that is that, you know, actual loss means what would have happened but for the defendant's illegal conduct. Well, that's what Bussell says as a good standard for finding what the actual loss is. That is true. And if during the bankruptcy Mr. Alessa said that he had $502,000 in tax debt that he owed. Yes. If he had correctly followed bankruptcy procedure and reported all his earnings, a bankruptcy court would have set up him on a schedule to pay that $502,000. And he would have been able to pay that full amount. Now it's true, it's possible he couldn't have paid it during the time of the conspiracy. But the statute 3664 specifically says that the defendant's ability to pay is not something you take into consideration when you determine restitution that you look only, that it's 3664 F1A says that the restitution amount should be the full amount of loss to the victim and it shouldn't be reduced by the defendant's ability to pay. But that's a little different though because if Alessa never had the ability to pay the government the full tax amount, then the government never lost that full amount. But the government had the ability to collect that over time, even if it wasn't just during the offense period. First of all, the offense was revealed and it was caught and it was stopped. It could have gone on for longer. But I guess that my question is, is there any evidence before the district court that Alessa had the ability to pay the full 500,000? Yeah, I don't think that there is specifically. Jackie, there were assets that were in Jackie's names instead of Alyssa's names, but I don't think there was any finding that he had the ability to pay that full amount during the conspiracy. Do you know my problem though? If Alessa never could have paid the full 500,000 amount, the government didn't lose 500,000. They lost only the amount that Alessa had the ability to pay, right? I disagree. The government could have collected that 500,000 over time. They have a 10-year collection period. They have a 10-year collection period, and that's the amount of tax due. I've never seen a tax – I mean, this court in – I think it's Mamet and the Seventh Circuit in Brimberry both held that the amount hidden in a tax evasion or evasion of payment case isn't the correct amount of loss. It's the total amount of tax owing to the government. And, for example, in Cote, which we cite in our brief, a Second Circuit case, which was fairly similar to this one, the Second Circuit, they didn't address this issue specifically, but the Second Circuit held that the loss, the restitution loss, was the full amount of tax interest and penalties owed. Well, didn't those cases involve the actual taxpayer himself? This is a little different. We have – Mr. Bowen is not – was not charged with any evasion of taxes on his own part. He was charged in one count of conspiracy assisting Mr. Alessi, correct? Yes. Well, Cote was also a conspiracy charge where someone conspired – So those other cases deal with the efforts of a taxpayer who actually has a tax liability, who was a defendant in the case in terms of his or her tax liability,  The one – the cases you've just cited, the actual – I believe that Cote was a 371 conspiracy case, so there were non-taxpayers involved in assisting, and the restitution amount was the whole amount of tax, according to the Second Circuit. Following up on Judge Bumate's question, then, the fact of the matter is, is that the district court found that the goal of the conspiracy was to obstruct the collection of the entire tax debt and not just Alessi's income. Isn't that – wasn't that the finding of the court below? That's true, yes. And so that was the basis to then go back for the entire tax debt, even outside of the conspiracy period. That's right. Because the entire tax debt goes all the way back to 1998. That's right, but the 502 is what he reported on the bankruptcy petition and what he tried to discharge through bankruptcy. But in terms of Bowen's indictment, in terms of the period for Bowen's indictment and his charge of being part of a conspiracy, it had to do with his actions as a conspirator. Yes, and he lied during the bankruptcy in which they tried to discharge the whole 502,000. Yes, but in the 2013 bankruptcy petition, there was certain perjured testimony in terms of trying to assist Alessa, correct? Yes, and what I'm saying is, under Bussell's standard, if they had acted lawfully, the bankruptcy court would have set up a payment plan where he would have had to pay the full 502,000. He, meaning Alessa, would have had to have paid the full amount. That's true, but that's still the government's loss. The government would have been able to recover the full loss. If the government could have recovered it. Yes, over a certain period of time, yes. Does the bankruptcy court have the ability to lower the amount owed to the government? Yes, the bankruptcy court does have the ability to lower the amount, but Alessa was making a lot of money. I guess that's my question. Is there evidence that he makes a lot of money outside of the payments from Mr. Bowen? No, no, it's just the payments from Mr. Bowen, and we differ with the defendant on the amounts. We believe that there was 330,000 that was transferred from Bowen through Hayes to Alessa, not 172,000. My issue here, it's clear the government had the ability and authority to collect the 500,000. The only question is, if we're supposed to look at what actual loss is, if they never were going to collect the full 500,000, how is that the actual loss? Well, they would have collected it over time. But how do we know that? That's my point. What if Alessa never takes another job? Then you get that question in every tax case. We have evasion of assessment cases, and the restitution amount is the amount that you evaded assessment on. And you have evasion of payment cases, and it's the amount of taxes you owe, not your ability to pay. I mean, 3664 says that the defendant's ability to pay is not to be considered in restitution, that it's the loss, it's the actual loss. In this case, the tax loss. Yeah, no, I just imagine in those tax cases, there's some evidence that the taxpayer could pay that over time. Yeah, I've never seen that entered into the situation where we try to prove how much the taxpayer could have paid over time in order to prove that the tax loss is the actual loss to the government. It's always, this is the amount that's due to the government. The government is going to figure out a way to collect those taxes, even if it's over a 10-year payment time. They have 10 years to collect if there isn't fraud, and they have basically forever to collect if there's fraudulent activity. What other methods besides garnishment can the government collect? Well, in this case, they could have gone after some of Hayes' assets that might not have been... Again, this wasn't presented to the district court, but there are some... I also want to say that it's really not unfair to Bowen. Bowen makes it seem like it's very unfair to him because he only paid this small amount. Well, we believe it was 330,000. He says it's 172. But as he notes, Bowen paid $900,000 in taxes over this period, and a lot of that taxes was because Alyssa was his top salesman, and he wanted Alyssa to come back to work. Alyssa was, one year he sold 1,000 vacuums with... But the government shouldn't get a windfall either. If the government was never going to get the 500,000 from Alyssa, why should we get it from Bowen? I disagree that the government was never going to get the 500,000. I think Alyssa was getting paid a substantial amount of money, at least over $300,000 over this four-year period, and that Alyssa, over a period of time, could have paid that amount. It's just a question of, are you going to look at just simply this time frame for the government's collection, which I've never seen a tax case do in restitution. They always look at the full amount. They never look to the defendant's ability. Mr. Detterman, just so we're clear on this, though, for the purpose of the argument, you're not suggesting this court has to go down the path of trying to adjust the $172,000 figure. Either the district court got it wrong as to the figure, and it should have been $172,000, or the district court got it right. You're not suggesting that we have to try to recalculate the $172,000 figure over... I don't believe the district court ever made a finding out of $172,000. That's right. That's the point. I understand. Well, it doesn't appear to be any question that the amount of income that Alessa concealed during the conspiracy years was $172,000, right? That's actually very definable. No, Your Honor, I think it was more than that. The government argued it was $330,000. His argument is that some of that was Hayes's income, but there was very little... Was there a special... I apologize. Listen, maybe I missed this. Was there a special verdict for him on this in terms of the amount of the loss? I'm not aware of that. I don't think there was, was there? No, I don't believe so. The jury didn't make any specific finding on the amount of loss? No, and there was very little evidence that Hayes performed any real work during this period of time, and the evidence was there was about $330,000 that was paid. Defense counsel argues that some of that $330,000 was actually Hayes's income that she properly earned and that it shouldn't be attributed to Alessa. I guess that I will move forward to Molizo, defense attorney. Again, as this court noted, there are several reasons why his testimony was properly excluded. First, it was a collateral matter, and they were asking to bring in extrinsic evidence of a collateral matter and bring back the defense attorney. Second, defense counsel keeps calling it perjury, but even Mr. Molizo's testimony was sort of uncertain. He said that it was his standard practice to advise a client of a plea offer like that and that he believed he had communicated the plea offer. And I know the U.S. attorneys said that he never responded to the plea offer, so I don't think it's clearly that Hayes was perjuring herself. Second, the district court found under 403 there was just extensive impeachment evidence of Hayes. They called Hayes's own mother as a witness who said that Hayes was not an honest person, and they called 500 other witnesses that said that Hayes had lied about various things. And finally, Hayes is just kind of a red herring. There's no way that Hayes committed this conspiracy on her own. It couldn't have been committed without Bowen willing to change the payment entries and the sales forms in order to show that Alyssa was working, and it couldn't have happened without Alyssa being willing to work and having his domestic partner pay for the amount. So it's kind of a red herring about, you know, Hayes's testimony on that matter. It also would have been confusing. The judge also found it would have been confusing to the jury to have a former defense counsel come and testify whether or not he made a plea offer to the defendant and why was the jury hearing that. So the district court excluded this well within its discretion as extrinsic and also as cumulative and confusing and also the... You don't know what the defense counsel would get into, but it would touch on the attorney-client privilege. Unless the court has any more questions. Actually, I'd like to hear about Smith's expert testimony. Sure. Yes, Your Honor. So Smith, Jeffrey Dean Smith, he was called by the defense as an expert on the tax law as it applies to independent contractors. The judge... This had two problems, the government argued. First, he was going to testify about the law, and that might contradict the district court's instructions on the law. In fact, the district court gave an instruction about independent contractors and tax law. And second, the testimony touched on the ultimate issue on the case, that is, the government was arguing that the independent contracting... The independent contract was a sham, and Smith was testifying basically that, no, this was a proper way to do things. And so the question of whether it was a sham intended to obstruct the IRS's collection of taxes, Smith was testifying that, well, this was a proper way to do things, and so he was touching on their mens rea. At any rate, as we argue in our brief that when this issue came up, defense themselves proposed to ask these questions in the manner that they were asked. He said, asking the questions in a manner that doesn't fact-find away from the jury through hypotheticals. And he made that suggestion himself, and the judge said, okay, that's fine. I actually limited the government's expert in the same way. And so he actually invited this error, so the court should not address it. And finally, as we argue in our brief, I have one second left, is he was able to get around this hypothetical questioning. Like, he was asked if Hayes was an independent contractor, and then he responded to that by testifying that because Hayes was an independent contractor, the money was taxable to her. And later he said that because Hayes was an independent contractor, Alyssa's 2013 return was correct, reporting zero income because he had not received any income. And again, as we argue in our brief, since I have very little time, that much of Mr. Smith's testimony was contrary to the law and was just incorrect. For example, he testified that you're only taxable on money you receive versus money you earn, and that is an incorrect statement of law. Since 1930, in Lucas v. Earl, the Supreme Court said that you can't assign your income to someone else to avoid taxes. That would defeat the entire income tax system. So, any other questions? Thank you, counsel. Thank you, Your Honor. First, with respect to the expert issue, there was no invited error because the court indicated that she would only allow it the same way the summary witness was presented. He quoted my statement, which was, and it's in the brief, that I knew how not to violate the ultimate issue rule. And under Morales, this court has that, so never did I agree that it would be if the jury concludes. Mr. Kennedy, let me just get to the core of this. The record here, extract 3606 to page 3615 and then 3651 to 3652 reflects the following. Yes. The witness, Smith, was permitted to testify. Yes. And the district judge just curtailed it in terms of making sure that he didn't get to the ultimate issue by saying if the jury concludes. And the exact wording was as follows. If the jury were to conclude that Hayes was an independent contractor, then the money she received would be taxable to her. That was permitted. He testified as to that. And then he was permitted to testify that this would be true even if Hayes delegated her work to Alessa because she was the one that had the contract. And then thirdly, the J&L, Bowen's company, would be required to fill out a 1099 in Hayes' name and not Alessa's and that Alessa correctly then reported that he didn't receive any income. That was the import of the testimony he was permitted to give. And the only language that you take exception to is the court saying if the jury were to conclude that Hayes was an independent contractor. And essentially to suggest that that is seriously limiting his testimony, I don't see where that that is so unusual for there to be qualifiers on expert testimony making sure that the jury understands its function. He was permitted to testify, but they did not permit him to make the ultimate judgment. He had to, out of respect for the jury, say if the jury concludes that Hayes was an independent contractor, then these results would follow. The ultimate issue under Rule 704B is intent, the intent of the client, which would be willfulness here, and specific intent. Mr. Smith was precluded from saying, it's my opinion she was an independent contractor and an inside distributor trainee. Why? And then he would be giving his basis and reasons. It was my opinion that this. And so he was not allowed to give his opinion is the problem because if the jury concludes it, you're not giving them the objective evidence for them to conclude. No, he did. He was just paying respect to the fact that it would be up to the jury to determine based upon the facts, based upon the judge's instruction on the law. It's not experts that advise the jury on the law. It's a judge who advises a jury on the law. But the law was not the question. The question was what is the objective evidence to back up Mr. Bowen's subjective intent? I'd like to answer just briefly if I could. The government said with respect to Mr. Melezo, I will direct the court to page 25 of the opening brief. It says, the district court then asked Mr. Melezo, is that correct about the offer? Mr. Melezo said, yes, that's correct. The court then acquired to Melezo, was that offer conveyed to your client? Melezo answered, absolutely it was, yes. That's not equivocation. That's the record. Then it was, when the court asked whether the offer was rejected, Mr. Melezo answered, it was after discussion. Yes, that's the record, not the argument that I heard here. Now, with respect to the question with the bankruptcy... You can wrap up your three minutes. I will. In the bankruptcy court, every dime, every dime that Mr. Bowen paid, Hayes, was in the bankruptcy court because the bankruptcy court considered them as a family unit. So the bankruptcy court had every dime paid by Mr. Bowen to Ms. Hayes. The United States Bankruptcy Trustee made a factual finding that Ms. Hayes was an independent contractor, that she had Mr. Melezo working as the team leader for her on road trips in Utah and Nevada. And that was introduced under Rule 803-8 as a factual finding in this case. And so the idea that the $172,000 versus the $307,000, five witnesses, including two witnesses for the government, testified about Ms. Hayes' work... Counsel, thank you. We have your argument. Thank you so much. Thank you, Roger. This case is submitted.
judges: BYBEE, BUMATAY, Bennett